UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          CAUSE NO. 3:22-CR-32 DRL-MGG

VALO NEELY,

Defendant.

OPINION AND ORDER

Valo Neely moved *pro se* for compassionate release or alternatively service of his remaining sentence on home confinement. The government opposes his motion. The court denies his request for home confinement because the Bureau of Prisons has exclusive authority to determine where an inmate serves his custodial sentence, including whether transfer from a secure facility to home confinement is appropriate. *See* 18 U.S.C. § 3621(b); *Tapia v. United States*, 564 U.S. 319, 331 (2011); *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality).

Compassionate release is governed by 18 U.S.C. § 3582(c)(1), which says the court generally "may not modify a term of imprisonment once it has been imposed." One exception, argued here, is when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant moving for release bears the burden of establishing extraordinary and compelling reasons. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). The commentary of U.S.S.G. § 1B1.13 can provide guidance. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *see also* U.S.S.G. § 1B1.13 app. n.1 (medical conditions, age, or family circumstances). If the defendant can do so, then the court considers the 18 U.S.C. § 3553(a) factors to determine what reduction to award the defendant. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). The

government doesn't dispute that Mr. Neely exhausted his administrative remedies. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Mr. Neely illegally possessed four firearms and drugs. The court sentenced Mr. Neely on September 9, 2022 to 27 months for unlawfully possessing a firearm as a felon—a slight variance downward from the recommended guideline minimum of 30 months. He has served much of his sentence given his time in custody beforehand and time in prison since the sentence. His projected release date is January 19, 2024.

Mr. Neely has five minor children ages 3-16. Two teenagers (V.N. and Y.N., ages 16 and 14) live in Michigan with their mother.[1] He says she has become incapacitated due to a brain disease. The sentencing guidelines indicate that the "incapacitation of the caregiver of the defendant's minor child or minor children" may constitute an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13 n.1(C)(i). The government argues that Mr. Neely hasn't shown that his children's mother has become incapacitated since his sentencing.[2]

On this record, the court cannot find that the mother has become physically incapacitated or that her circumstances in the aggregate are such that she cannot care for these two teenagers. With his motion, Mr. Neely submitted medical records. Most of these records date from 2020 and 2021 and predate his sentencing. They also don't provide a basis for concluding that the mother has become

---

[1] There is a third teenager—but no longer a minor.

[2] The government also argues that Mr. Neely hasn't shown that he will provide hands-on care for his children upon release but instead seeks release so that he can work to support them financially. As crafted, the guidelines don't require that Mr. Neely be the caregiver for his minor children to constitute an extraordinary and compelling reason. A corollary provision concerning the "incapacitation of the defendant's spouse or registered partner" is limited to circumstances "when the defendant would be the only available caregiver for the spouse or registered partner," U.S.S.G. § 1B1.13 app. n.1(C)(ii), but the provision that Mr. Neely cites has no similar limitation in the notes, *see* U.S.S.G. § 1B1.13 app. n.1(C)(i)—themselves but guidance grafted on guidance, *see United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016); *United States v. Hill*, 563 F.3d 572, 581 (7th Cir. 2009). Given today's ruling, the court need not decide whether to imply such a limitation. *See United States v. Simmons*, 2021 U.S. Dist. LEXIS 211682, 11-12 (D.D.C. Nov. 2, 2021) (citing cases); *but see United States v. Lou*, 2023 U.S. Dist. LEXIS 42524, 5 (N.D. Ill. Mar. 14, 2023).

incapacitated. She received treatment for conversion disorder in March 2020 (a condition in which a person experiences physical and sensory problems, including some serious, despite no underlying neurologic pathology) and underwent a craniotomy (brain surgery) in June 2021. Afterwards, she received physical therapy, speech therapy, and occupational therapy. In July 2021, she received treatment for management of a post-operative wound infection and additional occupational therapy. According to the presentence report, before Mr. Neely's arrest the teenagers had lived with her, though he had stepped up more since she became ill.

Mr. Neely supplemented his motion with more recent medical records, but they likewise fall short of showing a level of incapacitation that would permit the court to find the circumstances today extraordinary or compelling. His children's mother went to the hospital emergency room in April 2023 for abdominal pain, nausea, vomiting, and bilateral lower extremity pain. She returned a few days later with ongoing nausea, vomiting, and abdominal pain. Her records also reflect a not insignificant history of medical conditions. This time, she was treated with medication, heat pack, and other conservative measures, with a recommendation for another urinary analysis based on a potential infection that ultimately resulted in treatment. By May 1, she reported that she was feeling better but that her symptoms were returning. Two days later, she told her doctor she was continuing with medications. That she presented to the emergency room for three days over a week does not make her incapacitated or support a finding of an extraordinary and compelling reason for early release of Mr. Neely. That remains truer still when, according to Mr. Neely, a nurse comes to the home to assist at times.

At sentencing, the court was aware of certain of the mother's medical conditions. The presentence report described her aneurysm in 2021, her surgery in 2022, and the effect they were having on several children, as did Mr. Neely's sentencing memorandum. Mr. Neely raised this concern during the sentencing hearing in advocating for a downward variance of 27 months. Sentences interfere with family relationships and obligations all the time, and some for good reason, but these

"effects are consequences of the parent's crime, not the sentence imposed." *United States v. Graham*, 915 F.3d 456, 459-60 (7th Cir. 2019). The court considered Mr. Neely's family circumstances among all the 18 U.S.C. § 3553(a) factors in announcing its 27-month sentence. To the extent family demands have changed since then, and though the court sympathizes with the challenges that face the mother, children, and Mr. Neely, the circumstances have not become so extraordinary or compelling to direct early release today.

In addition to these medical records, Mr. Neely presents a letter (October 18, 2022) from an investigator with the State of Michigan Children's Protective Services about an investigation into the mother's household, but he offers no reasons why this investigation occurred or the results of it. He suggests the utilities were turned off and there was little food in the home, but nothing corroborates that these were the reasons or that these conditions persist today. He also offers a letter from one of the teenagers (Y.N.) who says her mother understands her less and she prefers to confide in Mr. Neely. She mentions that money is tight, but never once offers any information to suggest the mother is incapacitated or that there is a basis for early release.

The § 3535(a) factors also firmly work against early release. The loss of emotional support for Mr. Neely's children from his incarceration is a direct result of his poor decisions and actions. Just punishment, deterrence, and public protection remain top of mind—not least when he exposed minor children, our community's most vulnerable citizens, to four illegal firearms (three loaded and one with a bullet in the chamber) all accessible under a pillow, against the wall, or in an unlocked drawer. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(B), (a)(2)(C). He kept heroin and marijuana in the home, and he was dealing from the home. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). After 19 prior convictions, including eight felonies, three violent crimes, and one prior firearm offense, the court cannot say today, based on this record, the children would be better situated in his care than with their mother at the moment, or that the § 3553(a) factors favor early release. While in prison, Mr. Neely has attended drug treatment

classes (even earning a certificate of achievement) and vocational training for concrete polishing; and he has received no discipline. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(D). The court applauds him for these achievements. These, and the many people rooting for his success (as evidenced by his petition), will certainly aid him in reintegrating upon his eventual release on or about January 19, 2024, but today the § 3553(a) factors remain largely unmoved from where they were eleven months ago.

The court addresses one final matter. Mr. Neely filed a third letter on June 30, 2023. He says he thinks the laws on felon-in-possession charges under 18 U.S.C. § 922(g)(1) have changed such that the Second Amendment to the United States Constitution would direct his release too. Though 28 U.S.C. § 2255 allows a federal prisoner to ask the court to vacate, set aside, or correct a sentence, the sentence must "violate[] the Constitution or the laws of the United States," exceed the maximum authorized by law, prove subject to collateral attack, or exceed the court's jurisdiction. Even if the court construed his short letter as an argument for a constitutional deficiency with the sentence, he waived his right to habeas corpus relief as part of his plea agreement, save for a circumstance not presented here. And given his previous felony history, including violent crime, no such challenge could likely be mounted. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 626 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); *United States v. Hill*, __ F.4th __, 2023 U.S. App. LEXIS 8239, 4 (7th Cir. Apr. 6, 2023) ("after *Bruen*, no appellate court has held that § 922(g)(1) violates the Second Amendment"); *see also New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

For these reasons, the court DENIES Mr. Neely's request for compassionate release or to be transferred to home confinement [ECF 35].

SO ORDERED.

August 8, 2023                                    *s/ Damon R. Leichty*
                                                  Judge, United States District Court

5